(30 Misc. Rep. 254.)

## PETRI v. THIRD AVE. R. CO.

(Supreme Court, Trial Term, New York County.   January, 1900.)

STREET RAILROADS—COLLISION—ACTION FOR INJURIES.
    Plaintiff could not recover for injuries resulting from his wagon being
    struck by defendant's cable car, where he saw the car in time to stop
    his wagon, but miscalculated the distance, and attempted to drive in front
    of the car.

Action by William Petri against the Third Avenue Railroad Company.   On motion by defendant to set aside the verdict.   Granted.

Samuel Campbell, for plaintiff.

Hoadly, Lauterbach & Johnson (H. M. Ward, of counsel), for defendant.

RUSSELL, J.   The plaintiff recovered a verdict of $1,100 for injuries sustained by being thrown from his light delivery wagon at the intersection of Sixteenth street and Third avenue on the 21st of September, 1896.   The defendant moves to set aside the verdict as against the weight of evidence, and upon the exceptions taken at the trial.

The car which struck his wagon was on the eastern track, going northerly; there being no obstruction to the sight of either the gripman or the plaintiff, to prevent either seeing the other in due time. The limit of speed of the cable car was nine miles an hour, and we may assume, for this motion, that it was going at that rate of speed until the brakes were set to stop it.   The plaintiff came from the West side, through Sixteenth street, to cross Third avenue; driving, as he stated, a pretty fast horse at a good rate of speed, which must have been at least equal to that of the car.   He says that he saw the car when it was a couple of houses from Fifteenth street, and judged that he could easily cross ahead of the car.   On cross-examination he said that the car was four or five houses from Fifteenth street; and he was unable to say why his wagon, going at the speed it did, was struck by the car before it got across.   Other witnesses testified that the car was much nearer, so that the actual distance of the car from the south side of Sixteenth street, where the plaintiff crossed Third avenue, might have been determined by the jury to be anywhere from 30 to 150 feet.   The plaintiff must disclaim the effect of his own testimony in order to have his recovery sustained.   It is plain enough that if he was only going half as fast as the cable car, and was even 100 feet away from it when he struck the western track, he could easily have been beyond Third avenue before the car reached the point of his crossing, unless he stopped upon the track.   It is very evident, however, that he is right in saying that he judged that he could cross the track ahead of the car, and also evident that he made a miscalculation.   Was there imposed upon the gripman the duty of superior judgment to that of the plaintiff, in determining that the plaintiff could not cross the track ahead of the car, and so did his omission to stop the car before reaching the crossing become the negligence of the defend-

ant? We may assume that the plaintiff had as good a right to cross as the car had to proceed along the line of the avenue. The plaintiff had the undoubted privilege of so doing, if, with ordinary prudence, he could pass the intersecting point before the car reached it. He had no right to assume that the gripman would stop the car, which was conveying passengers, if that gripman also believed that the plaintiff would cross ahead in sufficient time. He also knew that, if the car was so near that no prudent man would suppose he was going to cross ahead of it, the gripman would see no necessity for stopping to avoid a collision with him. A person crossing a track with a vehicle must take into consideration, not only the distance of an approaching car, but also what the controller of that car would have the reasonable right to expect in the way of prudent caution on the part of the driver of the vehicle. He well knew that the gripman could not, in the discharge of his duty, stop before every crossing, on the mere guess that a wagon approaching would be placed in a position of danger from lack of prudent driving on the part of the person controlling that vehicle. I do not see why the gripman is to be judged by any higher rule than the plaintiff himself. If the gripman, seeing the situation of the two moving objects approaching the same point, could, as the plaintiff did, have judged that the plaintiff might, with proper diligence, easily cross ahead, why was it negligence on his part to make the same mistake that the plaintiff did? If, on the other hand, the plaintiff was so near that the gripman had the fair right to believe that the horse would be stopped or turned up the avenue, what duty was imposed upon that gripman to guess at the probable action of the plaintiff, and stop his car load of passengers, to await the decision on the part of one who might be reasonably supposed not to be willing to place himself in a position of peril? That gripman did not see ahead of him any helpless object, like a child or a broken-down vehicle, upon the track. He beheld emerging from Sixteenth street a horse and wagon controlled by an apparently competent person, with no intimation that such person would not exercise his superior power to choose any part of the street way for his wagon and himself which was conducive to safety.

From any point of view sustained by any reasonable evidence, there was nothing upon which the jury might rest a verdict that the gripman was negligent, or that the plaintiff was free from negligence. The trial court might well have dismissed the complaint at the close of the evidence, and the verdict should be set aside, not only as against the weight of evidence, but because there was not a fair case made for the jury to pass upon.

Ordered accordingly.